**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**James Clayton NEU,
Defendant/Appellant.**

**No. 88–2778.**

United States Court of Appeals,
Tenth Circuit.

July 17, 1989.

---

Michael J. Norton, Acting U.S. Atty., and F. Joseph Mackey, Asst. U.S. Atty., Denver, Colo., for plaintiff/appellee.

Harvey A. Steinberg, Springer and Steinberg, P.C., Denver, Colo., for defendant/appellant.

Before MOORE, ANDERSON and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

James Clayton Neu appeals from a judgment of the United States District Court for the District of Colorado. Neu had tendered a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2), reserving his right to appeal from the judgment, specifically to review the adverse determination made on his pretrial Motion to Suppress. R.Vol. II at 56–59. On this appeal, Neu renews the argument made in connection with that motion, i.e., whether the stop and detention of Neu was pretextual, in violation of the Fourth Amendment.[1]

On July 22, 1987 in the mid morning, Trooper Ralph Martinez of the Colorado State Patrol first observed Neu driving a Harley–Davidson motorcycle South on Main Street in Lamar, a small town in Colorado. R.Vol. II at 10–11. Martinez testified that his attention was attracted to the motorcycle because it had an open exhaust system, and such systems often produce excessive noise, a violation of state law. *Id.* at 11. Martinez further testified that other law enforcement agencies had warned that members of the Hell's Angels organization might possibly be passing through Lamar. *Id.* at 13. In this connection, Martinez had been requested to keep a record of any sightings of motorcycles passing through the town. Martinez had already complied with this request by reporting a number of sightings. *Id.* at 14.

Martinez spotted the motorcycle again some two hours later. At this time, he requested a check on the license plate num-

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir. R. 34.1.9. Therefore, the cause is ordered submitted without oral argument.

ber, but mistakenly reported the plates as Missouri plates.[2] Because of the error, the dispatcher informed Martinez that no record was found. *Id.* at 12.

The third and final sighting occurred at around 12:45 p.m. Martinez, who was driving a marked patrol cruiser, noticed Neu driving the motorcycle northbound on Main Street out of Lamar. Martinez made a U-turn on Main Street in an effort to follow Neu in order to verify his license plate number and state. He was also looking for any insignia, symbols, or markings that would identify Neu as belonging to the Hell's Angels or some other such organization in accordance with the request that had been made of him. *Id.* at 16. In order to read the small motorcycle plate, about half the size of an automobile plate, Martinez had to follow Neu at a close distance —within a car's length. *Id.* at 16, 38. Martinez called in the plate number, this time identifying the plate as an Arizona plate.

Martinez estimates that he and Neu were traveling at between 55 and 60 miles per hour on the highway north of town. The posted limit was 50 miles per hour. Suddenly, Neu decelerated abruptly to somewhere between 10 and 15 miles per hour. *Id.* at 17. Martinez was compelled to apply his brakes immediately to avoid a collision. More specifically, Martinez testified, "If I wouldn't have hit my brakes and hit them pretty hard, I would have run over the defendant, James C. Neu." *Id.* at 43.

Martinez testified that he believed Neu's deceleration violated Colo.Rev.Stat. § 42–4–1003 by impeding traffic.[3] R.Vol. II at 20–21. He promptly pulled Neu over. Martinez asked Neu whether or not he had moved into Lamar. When Neu advised he was just passing through, Martinez asked him if he had a driver's license. *Id.* at 21. Neu responded that he had left it in a motel in Dallas, Texas. Instead, he presented a business card with the name "James New" on it. Neu also presented a valid Arizona title to the motorcycle he was driving. During this time, Martinez noticed that Neu had a "large sum" of money in his wallet. *Id.* at 22.

Because Neu did not have a valid driver's license on his person, Martinez placed Neu under arrest. *See* Colo.Rev.Stat. § 42–2–101(1)(a)(I). Martinez conducted a pat-down search of Neu, discovering a loaded .38 revolver in the left boot holster. Subsequent searches of the motorcycle revealed a loaded .9 mm handgun in a bag, several hundred rounds of ammunition, a recipe for the production of amphetamines, and a grenade.[4] Subsequent searches of Neu revealed quantities of marijuana and amphetamines.

The sole issue on this appeal is whether or not Trooper Martinez acted within the strictures of the Fourth Amendment when he initially stopped Neu for impeding traffic. Neu concedes that after he revealed that he did not have a driver's license on his person, Martinez had probable cause to arrest. Neu also concedes that all subsequent searches and seizures of evidence then would have been proper.

The standard of review for denial of a motion to suppress is settled. We must accept findings of fact by the court below unless clearly erroneous. If or where findings are not made, this court must uphold the ruling if there is any reasonable view of the evidence to support it. *United States v. Comosona,* 848 F.2d 1110, 1111 (10th Cir.1988) (quoting *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir.), *cert. denied, Threat v. United States,* 467

---

**2.** The plate was actually an Arizona plate. Martinez testified that his error was due to the similar coloration of the two plates. *Id.* at 14.

**3.** Colo.Rev.Stat. § 42–4–1003 provides:

"**Minimum speed regulation.** (1) No person shall drive a motor vehicle on any highway at such a slow speed as to impede or block the normal and reasonable forward movement of traffic, except when a reduced speed is neces-

sary for safe operation of such vehicle or in compliance with law."

**4.** It was possession of the grenade that formed the basis for Count Two of the indictment against Neu, and under agreement between the defense and the prosecution this was the only count remaining by the time of the pretrial hearing and the one to which Neu pled guilty. *See* 26 U.S.C. §§ 5845(a)(8) and (f), 5861(d) and 5871.

U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984)).

■ A traffic stop, such as the one involved here, is ordinarily a limited seizure within the meaning of the Fourth Amendment. Thus, it is subject to the less rigorous requirements of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), rather than the more stringent constitutional strictures of a custodial arrest. Since Trooper Martinez testified that arrest would not have been the accepted practice for the traffic violation of impeding traffic, we analyze this case under *Terry. See United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988).

■ *Terry* provides a two-step inquiry for constitutional "unreasonableness": "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. *See also Guzman,* 864 F.2d at 1518. The constitutionally required level of suspicion typically required for a *Terry* stop falls short of the probable cause standard (i.e., probable cause to believe that the person being stopped has violated, is violating, or is about to violate the law). *See Terry,* 392 U.S. at 20–27, 88 S.Ct. at 1879–83. To stop a motor vehicle, one must have "at least articulable and reasonable suspicion that ... either the vehicle or an occupant is ... subject to seizure for violation of law." *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). Thus, a traffic detention will certainly be justified if *probable cause* for the seizure does in fact exist, whether or not a traffic court does or would find the person guilty of the alleged infraction. *Cf. United States v. Recalde,* 761 F.2d 1448, 1454 (10th Cir.1985).

■ As to the scope of investigative action permitted in a routine traffic stop, an officer may request to see the driver's license and vehicle registration, run a computer check, and issue a citation. *Guzman,* 864 F.2d at 1519. *Cf. Recalde,* 761 F.2d at 1455. To assure that the traffic stop is not a pretext for an officer to investigate unrelated criminal activity for which the officer does not have the reasonable suspicion necessary to support a detention, this court in *Guzman* imposed an objective test: "a court should ask 'not whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.'" *Guzman,* 864 F.2d at 1517 (emphasis in original) (quoting *United States v. Smith,* 799 F.2d 704, 709 (11th Cir.1986)). The subjective intent of the officer is not material. *See Guzman,* 864 F.2d at 1518.

■ We believe the facts as found by the district court support its conclusion that the stop was constitutionally reasonable, and thus that all evidence obtained as a consequence was lawfully obtained. Although it is true, as the district court recognized, that Trooper Martinez concededly made a "couple [of] very bad errors of judgment" in his pursuit of Neu, specifically in making the U-turn, speeding through town, and following Neu so closely, the actions of Martinez cannot excuse the response of Neu. R.Vol. II at 54–55. The court clearly found that Neu's deceleration was unreasonably abrupt, so abrupt that it nearly caused an accident. "[E]ven though tail-gating is very dangerous, so is slamming on your brakes when someone is close behind you." *Id.* at 55. We see no reason to disturb this factual finding, and thus we accept the court's conclusion that Martinez had probable cause to believe Neu had violated the traffic laws. *Id.* at 56. It does not matter whether Neu might eventually have been vindicated in traffic court.

It also does not matter what lingering suspicions Martinez in fact might have harbored against the "biker." We only ask whether a reasonable officer would have stopped a motorist under the same traffic circumstances as involved here. We find it wholly credible to believe that a reasonable law officer would have reacted similarly in stopping and citing Neu. Martinez did stop Neu and requested his driver's license, a request completely in keeping with the scope of a traffic detention. Accordingly, we accept the court's conclusion that no

Fourth Amendment violation occurred. The court properly denied the motion to suppress.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.