UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward Lee DONNES, Defendant–
Appellant.

No. 91–8003.

United States Court of Appeals,
Tenth Circuit.

Oct. 16, 1991.

**1432**

Douglas G. Madison of Dray, Madison & Thompson, Cheyenne, Wyo., for defendant–appellant.

Richard A. Stacy, U.S. Atty., John R. Barksdale, Asst. U.S. Atty., Casper, Wyo., for plaintiff–appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.*

BALDOCK, Circuit Judge.

Defendant-appellant, Edward Lee Donnes, entered a conditional guilty plea, Fed.R.Crim.P. 11(a)(2), to a charge of possession with intent to distribute methamphetamine. 21 U.S.C. § 841(a)(1). Pursuant to a written plea agreement, defendant reserved his right to appeal the order of the district court denying his motion to suppress. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

■ On appeal from the denial of a motion to suppress, "our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the government." *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir.1990). *See also United States v. Morgan*, 936 F.2d 1561, 1565 (10th Cir.1991). In the absence of findings by the district court, we must uphold the ruling " 'if there is any reasonable view of the evidence to support it.' " *Morgan*, 936 F.2d at 1565 (quoting

---

* The parties agree that oral argument is unnecessary and that the case may be submitted on the briefs. Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2.

The case therefore is ordered submitted without oral argument.

*United States v. Neu,* 879 F.2d 805, 807 (10th Cir.1989) (citation omitted)). Questions of law, including ultimate determinations of reasonableness concerning fourth amendment issues, are reviewed *de novo. Id.* at 1565–66 (citing *United States v. Butler,* 904 F.2d 1482, 1484 (10th Cir.1990)).

The district court held an evidentiary hearing on the fourth amendment issues raised in defendant's motion, and the factual background set forth below is taken substantially from the memorandum opinion of the district court.[1] On March 28, 1989, defendant traveled from Billings, Montana to Sheridan, Wyoming, along with two companions, in order to retrieve his belongings from a rental house in Sheridan. The house was rented to defendant's then-girlfriend, Cheryl Flippin, with whom defendant had lived for "quite a while." Defendant had lived continuously in the rental house until February 1989. Defendant and Flippin had previously padlocked the front door of the house to secure the premises.

On March 23, 1989, five days prior to defendant's return to Sheridan, state law enforcement officers executed a search warrant at the house. An arrest warrant had also been issued for Flippin. Law enforcement officers informed the owner of the house, Richard Marousak, of the search warrant, and he attempted to assist them in gaining entry. However, Marousak's key would not open the padlock, and the law enforcement officers subsequently used a bolt cutter to obtain entry. Following the search, which yielded contraband weapons, Marousak, with the permission of the law enforcement officers, resecured the house by placing a new padlock on the door.

When defendant arrived at the house on March 28th, in possession of both a key to the front door and a key to the padlock, he discovered that his key to the padlock did not work. Defendant forced the door open to gain entry. A neighbor observed defendant and his two companions forcing their way into the house and called the Sheridan Police Department. When police officers arrived, they ordered defendant and his two companions out of the house and proceeded to check their identification. Defendant told the officers that Flippin, who had paid rent on the house through April 13th, gave him permission to be on the premises. The officers transported defendant and his two companions to the police station in order to verify that defendant had permission to be on the premises. After further questioning at the police station, defendant and his two companions were placed under arrest for burglary, and for being accessories after the fact in aiding and abetting a fugitive.

At some time during the questioning of defendant and his two companions at the house, Marousak arrived with a friend, Bill Bertrand. They remained in their vehicle until the defendant and his companions had been taken to the police station, and then approached a law enforcement officer who remained at the house. Marousak expressed his concern to the officer about some of his belongings in the house and wanted to check to see if anything was missing. The officer entered the house, without a warrant,[2] ostensibly to further investigate the suspected burglary, look for other suspects, and retrieve the search warrant that had been left in the house five days earlier. Bertrand and Marousak followed the officer inside the house. While looking around the living room, Bertrand noticed a glove lying on the floor. The glove was "bulging way out" and Bertrand, being suspicious, picked it up and looked inside where he saw a syringe. Ber-

---

1. Defendant moved to suppress narcotics which were seized from a house rented by defendant's girlfriend, as well as two firearms seized from a car owned by defendant's friend. The district court granted defendant's motion with respect to the firearms, and denied defendant's motion with respect to the narcotics. The firearms charges subsequently were dismissed pursuant to a plea agreement. The factual background herein relates only to the search of the house.

2. During the officer's eighteen years on the police force, he had never once obtained a search warrant, and according to the district court, the officer "didn't even know what a search warrant was...." III R. 276, 413.

trand immediately gave the glove to the officer.

Suspecting that the syringe was narcotics paraphernalia, the officer removed the syringe and a camera lens case which was also inside the glove. The officer opened the case and discovered a plastic bag containing two smaller bags and some "bindles" which were subsequently determined to hold methamphetamine.[3]

In his motion to suppress evidence seized from the search of the house, defendant argued that the discovery of the narcotics resulted from a warrantless search of the house. The district court disagreed,[4] finding that Bertrand, rather than the officer, discovered the glove, and that the defendant had failed to meet his burden of showing that Bertrand was acting as a government agent at the time of the discovery.[5] *See United States v. Smith,* 810 F.2d 996, 997 (10th Cir.1987) (fourth amendment does not prohibit search or seizure conducted by private person not acting as government agent or in concert with government official), *cert. denied,* 488 U.S. 888, 109 S.Ct. 218, 102 L.Ed.2d 210 (1988). The district court found that the officer's actions of taking the glove and looking inside did not exceed the scope of the private search. *See United States v. Walsh,* 791 F.2d 811, 815 (10th Cir.1986) (where state actor does no more than repeat the private search and inspect what is in plain view, search does not infringe on any legitimate expectation of privacy). The district court then reasoned that the syringe, being in plain view, justified the warrantless seizure of the glove and its contents. On appeal, defendant does not challenge any of this reasoning. Rather, the thrust of defendant's argument is that by opening the camera lens case, found inside the glove, the officer conducted an additional warrantless search, separate and distinct from the plain view search of the glove.[6]

In *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), the Supreme Court recognized a standard

---

**3.** On April 7, 1989, defendant was charged by state authorities with possession of a controlled substance with intent to deliver and being an accessory after the fact. These charges along with the earlier burglary and aiding and abetting charges were dropped following defendant's indictment by a federal grand jury. All of the charges against defendant's two companions were dropped two days after their initial arrest.

**4.** As a threshold matter, the district court found that the defendant had standing to challenge the search of the house. Given that the defendant lived in the house continuously for several months until a few weeks before the day of the search, he had taken steps to secure the house by placing a padlock on the door, had personal belongings in the house, and had a key to the front door, the district court's finding is amply supported. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 1688, 109 L.Ed.2d 85 (1990) ("[defendant's] status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable").

**5.** The district court cited *United States v. Feffer,* 831 F.2d 734, 739 (7th Cir.1987), and *United States v. Snowadzki,* 723 F.2d 1427, 1429 (9th Cir.), *cert. denied,* 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984), for the proposition that the defendant had the burden to establish that the government involvement was significant enough to change the character of the search. 752 F.Supp. 411. We have never had occasion to express an opinion on this issue and find it unnecessary to do so here in light of our holding.

**6.** We recognize that a party is precluded from advancing a theory on appeal that was not specifically raised before the district court. *United States v. Dewitt,* 946 F.2d 1497, 1499 (10th Cir. 1991); *United States v. Rascon,* 922 F.2d 584, 587–88 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991). Although defense counsel's argument at the suppression hearing focused primarily on the legality of the officer's presence in the house, defendant specifically raised the issue of the search of the camera lens case in his memorandum of points and authorities filed in support of the suppression motion. I R. doc. 44 at 17–19. Furthermore, during the two-day suppression hearing, testimony concerning the circumstances surrounding the officer's discovery of narcotics in the camera lens case was adduced. II R. 198–201; III R. 264–66, 277–82, 287, 382–86, 393–94. Moreover, although the district court did not resolve defendant's legal argument raised here, it made sufficient factual findings for us to resolve the remaining legal issue. In light of this, and the government's decision to address this point on the merits, we find that the defendant has adequately preserved the issue for appeal.

for evaluating the actions of law enforcement officials when presented with evidence uncovered during a private search. The Court stated that "[t]he additional invasions of [defendant's] privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search." *Id.* at 115, 104 S.Ct. at 1657. The district court found that Bertrand gave the glove and its contents to the officer immediately after seeing the syringe inside the glove. Bertrand did not himself open the camera lens case which was also inside the glove. This fact distinguishes the present case from *United States v. Walsh,* 791 F.2d 811 (10th Cir. 1986), on which the district court relied. In *Walsh,* we held that a law enforcement official did not need a warrant to view items inside a suitcase, notably suppressors (silencers) lacking serial numbers, after airline employees had already opened the suitcase and examined the suppressors. *Id.* at 813–14. Here, by contrast, Bertrand never opened the camera lens case or viewed its contents prior to turning it over to the officer. This is not the case in which the conduct of the law enforcement official enabled him "to learn nothing that had not previously been learned during the private search." *Jacobsen,* 466 U.S. at 120, 104 S.Ct. at 1660 (footnote omitted). The officer's warrantless search of the camera lens case exceeded the scope of the private search.

■ The Supreme Court has long recognized that containers are subject to protection under the fourth amendment.[7] *See Smith v. Ohio,* 494 U.S. 541, 110 S.Ct. 1288, 1289, 108 L.Ed.2d 464 (1990) (per curiam) (brown paper grocery bag); *United States v. Place,* 462 U.S. 696, 705–06, 103 S.Ct. 2637, 2643–44, 77 L.Ed.2d 110 (1983) (luggage); *Ex parte Jackson,* 96 U.S. 727, 733, 24 L.Ed. 877 (1877) (letters and packages). "It is fundamental that, absent some special exception, all containers and packages will receive the full protection of the fourth amendment during a police search." *United States v. Bonitz,* 826 F.2d 954, 957 (10th Cir.1987) (citation omitted). In order to receive protection under the fourth amendment, a defendant must have a reasonable expectation of privacy in the contents of the container. *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).

■ While neither the district court's memorandum opinion nor the government's brief addresses whether the defendant exhibited a reasonable expectation of privacy in the contents of the camera lens case, the record developed at the evidentiary hearing

---

7. Prior to the Supreme Court's recent decision in *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Court extended fourth amendment protections to containers found in automobiles. *See Robbins v. California,* 453 U.S. 420, 428, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981) (plurality opinion) (packages wrapped in opaque plastic); *Arkansas v. Sanders,* 442 U.S. 753, 766, 99 S.Ct. 2586, 2594, 61 L.Ed.2d 235 (1979) (luggage); *United States v. Chadwick,* 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977) (footlocker). Thus, when law enforcement officers had probable cause to believe that contraband was in a particular container in an automobile, they could seize the container without a warrant, but could not open it until a warrant was obtained. *Sanders,* 442 U.S. at 763–66, 99 S.Ct. at 2592–94. In *Robbins,* the Court held that probable cause to believe that contraband was in an automobile did not permit a warrantless search of a container discovered in the automobile. *Robbins,* 453 U.S. at 428, 101 S.Ct. at 2846. In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Court overruled *Robbins,* holding that when law enforcement officers have proba-

ble cause to search an automobile, they may open any container which may conceal the object of the search. *Id.* at 825, 102 S.Ct. at 2173. Thus, following *Ross,* an anomalous dichotomy existed between the rule in *Ross* and the rule in *Chadwick* and *Sanders—i.e.* "if there is probable cause to search a car, then the entire car— including any closed container found therein— may be searched without a warrant, but if there is probable cause only as to a container in the car, the container may be held but not searched until a warrant is obtained." *Acevedo,* 111 S.Ct. at 1985. *Acevedo* expressly overruled *Sanders,* holding that the police may conduct a warrantless search of a container found in an automobile when they have probable cause to believe contraband is contained in the automobile, regardless of whether the probable cause extended specifically to the particular container. *Acevedo,* 111 S.Ct. at 1991. However, *Acevedo* was expressly based on an application of the automobile exception, *id.* at 1990–91, and it does not alter the principle that a container discovered inside the home is protected by the warrant requirement of the fourth amendment.

before the district court as well as the specific factual findings of the district court support defendant's position. The container at issue was a closed camera lens case made of black leather and therefore opaque. III R. 281, 312, 362. The case was placed inside a glove. The glove was found on the living room floor of the house. The district court found that the defendant had a reasonable expectation of privacy in the surrounding area when it ruled that defendant had standing to assert his fourth amendment claim.[8] Given these circumstances, the defendant clearly manifested a reasonable expectation of privacy in the contents of the camera lens case. *See Robbins v. California,*[9] 453 U.S. 420, 426, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981) (plurality opinion) ("closed opaque container ... reasonably 'manifested an expectation that the contents would remain free from public examination'") (quoting *United States v. Chadwick,* 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977)); *United States v. Sylvester,* 848 F.2d 520, 524–25 (5th Cir.1988) (defendant had reasonable expectation of privacy in contents of closed hunting box).

▋ This does not end our inquiry, as the Supreme Court has recognized certain exceptions to the fourth amendment protections afforded to containers. Probable cause to believe that contraband is stored in a container will justify a warrantless seizure so that a law enforcement officer may preserve the potentially incriminating evidence for the period of time necessary to secure a warrant authorizing the search of the container. *Texas v. Brown,* 460 U.S. 730, 749–50, 103 S.Ct. 1535, 1547–48, 75 L.Ed.2d 502 (1983) (plurality opinion) (Stevens, J., concurring); *see also Jacobsen,* 466 U.S. at 121–22, 104 S.Ct. at 1660–61 ("it

is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband"). Similarly, if an officer's observations lead him reasonably to believe that a container conceals contraband, the container is subject to a limited investigative detention. *Place,* 462 U.S. at 706, 103 S.Ct. at 2644 (reasonable suspicion that traveler's luggage contains narcotics permits law enforcement officers to detain luggage briefly and subject it to canine sniff test).

▋ Whether the officer had probable cause to seize the glove and its contents or whether he had a reasonable suspicion to subject the glove to an investigative detention is immaterial to the issue before us. The defendant does not dispute the warrantless seizure of the glove and its contents; rather, the defendant argues that the officer conducted a warrantless search of the camera lens case. Assuming arguendo that there was no fourth amendment violation up to the point when the officer seized the glove and its contents, the officer's action in opening and inspecting the contents of the camera lens case constituted an additional search unsupported by a warrant. *See Jacobsen,* 466 U.S. at 114, 104 S.Ct. at 1657 ("[e]ven when government agents may lawfully seize ... a package to protect loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package") (footnote omitted). In order to withstand scrutiny under the fourth amendment, the government must justify its action with a valid exception to the warrant requirement. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 2310 n. 11, 110 L.Ed.2d 112 (1990) (recognizing

---

**8.** The government argues that the defendant, by giving the glove to one of his two companions who then left it on the floor of the house, abandoned the glove and therefore lacked any legitimate expectation of privacy in the contents. First, we find nothing in the record to support the government's interpretation of the testimony adduced at the hearing. Second, given the fact that the glove was found inside the house in which the district court determined that the defendant had a reasonable expectation

of privacy, we find this argument to be unpersuasive.

**9.** Although *Robbins* was overruled by *Ross, see supra* note 7, we find its reasoning to be persuasive on this particular point, given that the holding of *Ross* was based on the limited context of automobile searches. *Ross,* 456 U.S. at 824–25, 102 S.Ct. at 2172–73.

that the seizure of a container "does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant, or one of the well-delineated exceptions to the warrant requirement") (citations omitted).

The Supreme Court has permitted the warrantless search of containers by law enforcement officials in limited circumstances. For example, a law enforcement officer, acting pursuant to the automobile exception, may open any container found within the automobile which might contain the object of the search. *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). A sufficiently regulated inventory search permits law enforcement officials to search closed containers found inside an impounded automobile, *Colorado v. Bertine*, 479 U.S. 367, 374–75, 107 S.Ct. 738, 742–43, 93 L.Ed.2d 739 (1987), or containers in the possession of a person being booked. *Illinois v. Lafayette*, 462 U.S. 640, 646–47, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65 (1983). Additionally, a search incident to a lawful arrest permits a law enforcement officer to conduct a warrantless search of a container located in the area of the arrestee's immediate control. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). *See also United States v. Cotton*, 751 F.2d 1146, 1148 (10th Cir.1985). However, the government has not raised any of these well-recognized exceptions, and there is no reasonable view of the evidence in the case before us that would support their application.[10]

The government asserts that the fact that the lens case was found inside the glove with a syringe which was in plain view gave the officer a "strong basis to infer that the container was associated with something illegal," and, therefore the search of the lens case would fall within the plain view exception. The sole authority cited by the government for this proposition is language in *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), interpreting the following dicta from *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979): "some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Id.* at 764–65 n. 13, 99 S.Ct. at 2593–94 n. 13. *See also Robbins*, 453 U.S. at 427, 101 S.Ct. at 2846.

While *Sanders* and *Robbins* have both been overruled, we believe that the plain view container exception to the warrant requirement of the fourth amendment remains valid.[11] Thus, when a container is "not closed," or "transparent," or when its "distinctive configuration ... proclaims its contents," the container supports no reasonable expectation of privacy and the contents can be said to be in plain view. *Robbins*, 453 U.S. at 427, 101 S.Ct. at 2846; *Sanders*, 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13. *See e.g., United States v. Es-*

---

**10.** The only one of these exceptions even remotely applicable to the facts of this case is a search incident to a lawful arrest. However, the trial court specifically found that the defendant was outside the house at the time he was taken into custody, and the search occurred after the defendant had been taken to the police station. Therefore, even if we assume that the defendant was arrested at the time he was taken to the police station, a point that is not altogether clear from the record and on which the district court did not specifically rule, it cannot be said that the search of the camera lens case was incident to the defendant's arrest because the search exceeded the area beyond the defendant's immediate control and was not contemporaneous with his arrest.

Nor can the search of the container be justified by exigent circumstances, for once the container was in the possession of the officer, there was no danger that the evidence would be lost or destroyed. *See United States v. Rengifo–Castro*, 620 F.2d 230, 232 (10th Cir.1980).

**11.** *See supra* notes 7 and 9; *see also Bonitz*, 826 F.2d at 960 n. 1 (Baldock, J., dissenting) ("*Ross* does not ... alter the rationale set forth in *Sanders* and *Robbins* that there is no reasonable expectation of privacy in the contents of a container where the nature of the container discloses those contents to the officers").

*chweiler,* 745 F.2d 435, 440 (7th Cir.1984) (police could open envelope which clearly indicated it contained key), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985); *United States v. Morgan,* 744 F.2d 1215, 1222 (6th Cir.1984) (police could open bottle without a warrant where label on bottle made it apparent that it contained contraband).

However, the plain view container exception has never been extended to a container as ambiguous as a camera lens case, and authority in this Circuit, over a dissent, is to the contrary. In *United States v. Bonitz,* we declined to apply the doctrine to a hard plastic case. *Bonitz,* 826 F.2d at 956. We recognized that the "hard plastic case did not reveal its contents to the trial court even though it could perhaps have been identified as a gun case by a firearms expert." *Id.* If a hard plastic case containing a gun does not subject its contents to plain view, certainly a camera lens case does not subject its contents to plain view.

■ The government concedes that a camera lens case is "not as distinctive as a kit of burglary tools or a gun case," but nevertheless argues that the narcotics found inside the camera lens case were in plain view because the camera lens case was inside a glove with a syringe. Essentially, the government would have us expand the plain view container exception to permit a warrantless search of any container found in the vicinity of a suspicious item. We recognize that the officer's experience and training could have led him to infer that the camera lens case contained narcotics in light of the fact that it was found inside the glove with a syringe. However, this inference does not alter the "cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576

(1967) (footnote omitted)). *See also Acevedo,* 111 S.Ct. at 1991.

■ The exception argued for by the government is neither "specifically established" nor "well-delineated." A warrantless seizure of an item in plain view requires, *inter alia,* that "its incriminating character ... be 'immediately apparent.' " *Horton,* 110 S.Ct. at 2308 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality opinion)). The "incriminating character" of the contents of a closed, opaque, innocuously shaped container, such as a camera lens case, is not "immediately apparent." The contents of such a container come into plain view only when the container is opened. Therefore, the plain view exception cannot be relied upon to justify a warrantless search of a container such as the one at issue in the present case. *See id.* at 2306 ("[i]f 'plain view' justifies an exception from an otherwise applicable warrant requirement, ... it must be an exception that is addressed to the concerns that are implicated by seizures rather than searches").

In *Robbins,*[12] the sole authority cited by the government, the arresting officers had smelled and actually seen marijuana in the defendant's car. *Robbins,* 453 U.S. at 422, 101 S.Ct. at 2843. A plurality of the Court rejected the argument that packages wrapped in green opaque plastic, which were also found inside the car, were plain view containers because an experienced observer could have inferred that the packages contained marijuana. *Id.* at 427–28, 101 S.Ct. at 2846–47.

Similarly, in *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), a majority of the United States Supreme Court found that descriptive labels on boxes of obscene films did not eliminate the reasonable expectation of privacy in the content of the films. *Id.* at 658–59, 100 S.Ct. at 2402–03; *id.* at 660, 100 S.Ct. at 2403 (Marshall, J., concurring). Justice Stevens expressly disapproved of an argument similar to that advanced by the

---

12. *See supra* notes 7, 9 and 11.

government here in stating that "[t]he fact that the labels on the boxes established probable cause to believe the films were obscene clearly cannot excuse the failure to obtain a warrant; for if probable cause dispensed with the necessity of a warrant, one would never be needed." *Id.* at 657 n. 10, 100 S.Ct. at 2402 n. 10.

In *Bonitz,* we declined to find that a hard plastic case was a plain view container despite the fact that it was found underneath a workbench in defendant's bedroom with soft-sided gun cases. *Bonitz,* 826 F.2d at 955–57. Furthermore, we held that a sear kit, which is used to convert a rifle into a fully automatic weapon, found in a plastic envelope, inside a file box, was not in plain view despite the fact that the file box was found on top of the workbench along with a can of black powder, ammunition reloading materials, and what appeared to be a hand grenade. *Id.* at 957. *Accord United States v. Miller,* 769 F.2d 554, 560 (9th Cir.1985) (neither plastic bag partially wrapped in masking tape, from which white powder had spilled, nor opaque fiberglass container, from which chloride odor associated with cocaine emanated, was a plain view container).

In short, we believe that the current state of the fourth amendment as it applies to containers, outside of the context of an automobile search, is that "[l]aw enforcement officers should not be permitted ... to conduct warrantless searches of containers that, though unrevealing in appearance, are discovered under circumstances supporting a strong showing of probable cause." *Miller,* 769 F.2d at 560. While we recognize that the Supreme Court has recently narrowed the fourth amendment protection afforded to containers, *see Acevedo,* 111 S.Ct. at 1991, it expressly limited its holding to searches pursuant to the automobile exception. Given that the container in the present case was found inside a house in which the district court determined that the defendant had a reasonable expectation of privacy, *Acevedo* is not controlling. Further, in light of the lack of authority for the government's position, we decline to expand the plain view container exception to the facts of this case.

At the point when the officer observed the syringe inside the glove, he arguably had grounds to seize the glove and its contents. However, by removing the lens case from the glove, and then opening the lens case, the officer exceeded the scope of the private search. The officer should have obtained a warrant, issued by a neutral and detached magistrate, prior to opening the lens case. The evidence discovered inside the camera lens case must be suppressed. Therefore, the order of the district court denying defendant's motion to suppress evidence is REVERSED, and the case is REMANDED to the district court. If the government has sufficient evidence apart from that which this court has held must be suppressed and that which the district court previously suppressed, the district court shall permit the defendant to withdraw the guilty plea and allow the government to proceed. Otherwise, the district court shall order the indictment dismissed. *See United States v. Monsisvais,* 946 F.2d 114, 118 (10th Cir.1991).