[Cite as *State v. Wehr*, 2014-Ohio-4396.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                      |
|--------------------------|---|------------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.     |
|                          | : | Hon. Sheila G. Farmer, J.    |
| Plaintiff-Appellant      | : | Hon. John W. Wise, J.        |
|                          | : |                              |
| -vs-                     | : |                              |
|                          | : | Case No. 14CA46              |
| DAVID A. WEHR II         | : |                              |
|                          | : |                              |
| Defendant-Appellee       | : | O P I N I O N                |

CHARACTER OF PROCEEDING:    Criminal appeal from the Richland County Court of Common Pleas, Case No. 2013-CR-0764

JUDGMENT:    Reversed and Remanded

DATE OF JUDGMENT ENTRY:    October 1, 2014

APPEARANCES:

For Plaintiff-Appellant

JILL COCHRAN
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellee

JOHN O'DONNELL III
13 Park Avenue West
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Plaintiff-appellant the State of Ohio appeals the May 14, 2014 Judgment Entry of the Richland County Court of Common Pleas granting defendant-appellee David A. Wehr, II's motion to suppress.

*Facts and Procedural History*

{¶2} On January 13, 2014, Wehr, was indicted with one count of possession of heroin in an amount greater than five grams but less than ten grams, in violation of R.C. § 2925.11(A) & (C)(6)(c), a felony of the third degree, one count of trafficking in heroin in an amount greater than five grams but less than ten grams in violation of R.C. § 2925.03(A)(2) & (C)(6)(d), a felony of the third degree, one count of tampering with evidence, in violation of R.C. § 2921.12(A)(1), a felony of the third degree, and one count of possession of Oxycodone (schedule II) in an amount less than bulk, in violation of R.C. § 2925.11(A) & (C)(1)(a), a felony of the fifth degree.

{¶3} On March 24, 2014, Wehr filed a motion to suppress the evidence seeking to suppress evidence found on his person as a result of a *Terry* pat down for weapons. The state filed a response on April 21, 2014. Wehr filed a supplemental memorandum on April 28, 2014. An evidentiary hearing was held on April 28, 2014. During the suppression hearing, the state called one officer, Deputy Raymond Frazier with the Richland County Sherriff's Department.

**A. Deputy Raymond Frazier.**

{¶4} Deputy Frazier has worked for the Richland County Sheriff's Department for 14 years. Deputy Frazier is also a canine handler. On November 17, 2013, Deputy Frazier was parked in his marked cruiser in the parking lot of the Budget Inn located at

1336 Ashland Road in Mansfield, Ohio as part of his routine patrol. The hotel management did not like people loitering on the property. Officers generally would drive around the parking lot to make their presence known and keep an eye out for people drinking or loitering in the parking lot.

{¶5} At 8:54 p.m., Deputy Frazier saw a 2002 White Toyota four-door with two people sitting inside at the Budget Inn parking lot with no lights on. As the officer pulled behind the Toyota on his way to exit the parking lot, the passenger exited the vehicle and ran towards the hotel office. Deputy Frazier testified that he exited his vehicle and yelled at the man, "Hey, where are you going?" and received no response.

{¶6} At this point, Officer Frazier approached the Toyota to make contact with the driver and registered owner, Wehr, as he was concerned that a crime might have just occurred or that the Wehr might need some further assistance. During the conversation, Deputy Frazier noticed that Wehr was reaching and fidgeting with something down near the floorboards of the vehicle. Deputy Frazier asked Wehr several times to stop reaching down near the floorboards. Wehr continued to reach near the floorboards of the vehicle and did not show his hands, causing Deputy Frazier to be concerned that Wehr could have a weapon.

{¶7} Deputy Frazier requested assistance, which arrived shortly thereafter. After back up had arrived, Wehr was removed from the vehicle and questioned as to what he was doing reaching down near the floor. Deputy Frazier briefly checked the floor to determine if there were any visible weapons. Seeing none, he became concerned that Wehr might have secreted a weapon on his person. Deputy Frazier then conducted a pat down search for officer safety. During the pat down, a pill bottle was

located in Wehr's sock in his right pant leg. Deputy Frazier removed the pill bottle and found it to be an Advil bottle. When asked by Deputy Frazier what was inside the pill bottle, Wehr responded that he did not know. Deputy Frazier opened the pill bottle and found individually wrapped bindles of heroin and Oxycodone pills inside.

{¶8} Wehr was questioned again about the pill bottle. He indicated that he did not know what was inside of the bottle. Wehr explained that the passenger had thrown the pill bottle on the floor prior to exiting the vehicle and that Wehr had picked the bottle up and tucked it into his sock.

{¶9} A free-air canine sniff was performed of the vehicle and the canine alerted to both sides of the vehicle. During a search of the vehicle a kitchen plate, razor blade, a cut straw and a set of digital scales were recovered from the area of the front passenger side floorboards. These items are known to be associated with drug activity according to Deputy Frazier's training and experience.

{¶10} The state did not present any other evidence. Camp did not offer any evidence or call any witnesses.

**B. The Trial Court's Decision.**

{¶11} The trial court filed a judgment entry on May 14, 2014, granting Wehr's motion to suppress the evidence. The trial court did not find any issue with the officer's contact with Wehr or the subsequent pat down of Wehr for officer safety. The trial court found that the incriminating nature of the object, in this case an Advil bottle, was not immediately apparent to Deputy Frazier and, therefore, he was not justified in removing the bottle from the Appellee's person and opening it.

*Assignment of Error*

**{¶12}** The state raises one assignment of error,

**{¶13}** "I. THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S MOTION TO SUPPRESS."

*Analysis*

**{¶14}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences

drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

### Deputy Frazier's Initial Contact with Wehr

{¶15} Contact between police officers and the public can be characterized in three different ways. *State v. Richardson*, 5th Dist. Stark No. 2004CA00205, 2005–Ohio–554, ¶23–27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147(6th Cir. 1990). The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *see also INS v. Delgado*, 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* 501 U.S. at 434-435, 111 S.Ct. 2382 (citations omitted).

> The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U.S. 491, 497–98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547,

1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required.

*Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

{¶16} The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson, supra; Flowers*, 909 F.2d at 147; *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968). This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida*, 460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry*,

> In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo mo- monetarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612(1972).

**{¶17}** The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson*, 2005-Ohio-554, ¶27; *Flowers*, 909 F.2d at 147. A warrantless arrest is constitutionally valid if:

> "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the *
> * * [individual] had committed or was committing an offense."

*State v. Heston*, 29 Ohio St.2d 152, 155–156, 280 N.E.2d 376(1972), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1162(1996). A police officer may draw inferences based on his own experience in deciding whether probable cause exists. *See, e.g., United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589(1975).

**{¶18}** The Ohio Supreme Court has held that a police officer's statement "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or to disregard. *State v. Smith*, 45 Ohio St.3d 255,

258–259, 544 N.E.2d 239, 242(1989), *reversed sub nom. Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464(1990); *State v. Crossen*, 5th Dist. Ashland No. 2010-COA-027, 2011-Ohio-2509, ¶13.

{**¶19**} Upon review, under the totality of the circumstances, we conclude the events in the case sub judice constituted a consensual encounter such that the Fourth Amendment was not implicated. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497(1980). In this case, the officer approached a parked vehicle and engaged in conversation with the driver after a passenger in the driver's vehicle ran from the vehicle. Deputy Frazier testifed he was concerned that a crime may have taken place or that the driver was otherwise in need of assistance.

### *Terry* pat-down of Wehr.

{**¶20**} Authority to conduct a pat down search does not flow automatically from a lawful stop and a separate inquiry is required. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment requires an officer to have a "reasonable fear for his own or others' safety" before frisking. Id. Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" United *States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), *citing Terry, supra*, 392 U.S. at 27. Whether that standard is met must be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual officers involved. *United States v. Hill,* 131 F.3d 1056, 1059 (D.C.Cir.1997), *citing Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶21} When Deputy Frazier approached the car, the passenger exited the vehicle and ran. Wehr immediately began digging around the floorboard area of the car. Weir ignored several requests by Deputy Frazier to stop and to show his hands. Under the totality of the circumstances, a reasonable officer could believe that Wehr may have been reaching for a weapon. *State v. Shrewsbury*, 4th Dist. Ross. No. 13CA3402, 2014-Ohio-716, ¶26. In *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), a case also involving a *Terry* stop, the officer ordered the defendant to step out of the car so he could see the defendant's movements more clearly. Id. The defendant ignored the officer's order, and this provided ample reason for the officer to fear for his safety. Id.

{¶22} In the case at bar, we find under the totality of the circumstances the pat down in of Wehr was lawful because a reasonably prudent person in this situation would have been justified to believe his safety was compromised.

### Removal of the pill bottle from Wehr's sock.

{¶23} The permissible scope of a *Terry* search is "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909(1968). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162, 166(1993), *citing Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617(1972).

**{¶24}** Although *Terry* limits the scope of the search to weapons, the discovery of other contraband during a *Terry* search will not necessarily preclude its admissibility. In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334(1993), the United States Supreme Court adopted the "plain feel" doctrine as an extension of the "plain view" doctrine. The Supreme Court stated,

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson*, 508 U.S. at 375-376, 113 S.Ct. 2130, 124 L.Ed.2d 334. *Accord, State v. Evans*, 67 Ohio St.3d 405, 414, 618 N.E.2d 162(1993), paragraph two of the syllabus.

**{¶25}** In the case at bar, Deputy Frazier testified that it was immediately apparent that the object concealed in Wehr's sock was a pill bottle. It is unusual for a person to carry a pill bottle concealed in one's sock. Coupled with the flight of the passenger upon the approach of the police cruiser, Wehr's reaching and fidgeting with something near the floorboard of his car, and Wehr's assertion that he did not know what was in the Advil bottle, we find the removal of the pill bottle from Wehr's sock to permissible.

### Deputy Frazier's opening of the pill bottle.

**{¶26}** The Fourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution proscribes, except in certain well-defined

circumstances, the search of property unless accomplished pursuant to a judicial warrant issued upon probable cause. *See, e.g., Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989); *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). That guarantee protects alike the "traveler who carries a tooth brush and a few articles of clothing in a paper bag," and "the sophisticated executive with the locked attaché' case." *United States v. Ross*, 456 U.S. 798, 822, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982). *Smith v. Ohio*, 494 U.S. 541, 543, 110 Sup.Ct. 1288,108 L Ed. 2d 464(1990). Many a closed container is accessible; opening it requires justification. *See United States v. Chadwick*, 433 U.S. 1, 14–15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977).

{¶27} This Court has observed,

> If an object is in a closed container, the object "is not in plain view and the container may not be opened unless the packing gives away the contents." Katz [Ohio Arrest, Search and Seizure (1997 Ed.) 214, Section 13.01] at 221, *citing United States v. Williams* (1994), 41 F.3d 192, *certiorari denied* (1995), 514 U.S. 1056, 115 S.Ct. 1442, 131 L.Ed.2d 321.

*State v. Smith*, 5th Dist. Stark No. 1998CA00322, 1999 WL 744168(June 21, 19990) at *3. The Ohio Supreme Court has held that "[t]he 'immediately apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." *State v. Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925, paragraph three of the syllabus (1986); *see Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). "In ascertaining the required probable cause to

satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience [.]" *Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925 at paragraph four of the syllabus. The United States Supreme Court has also explained that, in the context of determining whether contraband is in plain view, "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (*quoting Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Id. (*quoting Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Smith,* 5th Dist. Stark No. 1998CA00322, 1999 WL 744168; *State v. Lorenzo*, 9th Dist. Summit No. 26214, 2012-Ohio-3145, ¶4. Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be "a fair probability" that the object they see is illegal contraband or evidence of a crime. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus.

{¶28} In the case at bar, Deputy Frazier had probable cause to search the container based upon the suspicious location where Wehr was storing the container, the flight of the passenger from the automobile, Wehr's reaching around toward the floorboard area of the car, his refusal to show his hands and Wehr's assertion that he did not know what was inside the Advil bottle. In the case at bar, the container was

within the automobile at the time Deputy Frazier initiated his conversation with Wehr and had he not discovered it, it would have left the scene with Wehr.

{¶29} Under the totality of the circumstances and given the information known to Deputy Frazier at the time of the search, the evidence supports a finding that Deputy Frazier had probable cause to associate the Advil bottle with criminal activity. Therefore, Deputy Frazier had probable cause to open the Advil bottle.

{¶30} Accordingly, Deputy Frazier's search of the Advil bottle did not violate Wehr's rights under the Fourth Amendment, and the court erred in granting Wehr's motion to suppress.

*Conclusion*

{¶31} We find that the trial court incorrectly decided the ultimate or final issue raised in Wehr's motion to suppress, and further that the trial court failed to apply the appropriate test or correct law to the findings of fact. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172(8th Dist. 1994); *State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906(4th Dist. 1993); *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726(4th Dist. 1993); *State v. Bickel*, 5th Dist. Ashland No. 2006-COA-034, 2007-Ohio-3517, ¶32.

**{¶32}** We find that Deputy Frazier had probable cause to associate the container with criminal activity and his seizure and search of the container was justified under the plain-view doctrine.

**{¶33}** For the forgoing reasons, the judgment of the Richland County Court of Common Pleas, Ohio is reversed and this case is remanded for further proceedings consistent with this opinion.

By Gwin, P.J.,

Farmer, J., and

Wise, J., concur