[Cite as *State v. Burroughs*, 2020-Ohio-4417.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 9-19-91

    v.

KENNEDY M. BURROUGHS,             O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 19-CR-205

Judgment Affirmed

Date of Decision: September 14, 2020

---

APPEARANCES:

    *Sheena Bateman-Carothers* for Appellant

    *Nathan Heiser* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Kennedy M. Burroughs ("Burroughs"), appeals the November 26, 2019 judgment entry of sentence the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from the January 27, 2019 execution of a warrant for Burroughs's arrest for a misdemeanor-obstruction offense by Officer Chris Coburn ("Officer Coburn")—along with two additional officers—of the Marion Police Department at Burroughs's residence in Marion. (Aug. 6, 2019 Tr. at 3-4, 16). When law enforcement arrived at Burroughs's residence, Officer Coburn informed Burroughs that "she had a warrant and then she shut the door and locked it." (*Id.* at 4). After Burroughs closed and locked the door, Officer Coburn "looked to the window and saw her grabbing a bunch of plastic baggies and running to the back of the house." (*Id.* at 5). However, Officer Coburn did not know what was in the baggies. (*Id.* at 17).

{¶3} Thereafter, law enforcement entered the residence and Officer Coburn found Burroughs (with only her phone in her hand) and a juvenile in a bedroom—the portion of the house to which he saw Burroughs retreat with the plastic baggies. (*Id.* at 6). (*See also* State's Ex. A). Suspecting that Burroughs may have destroyed evidence, Officer Coburn "went into the bathroom that was attached to [the room in which he found Burroughs] and [he] checked the toilet, and it didn't look like it was

flushed. [He] checked the back of the toilet, and there was nothing in there." (Aug. 6, 2019 Tr. at 6). While inspecting the toilet, Officer Coburn saw a "zipped" (or closed) bookbag with "a plastic baggie hanging out of it" sitting next to the toilet in the bathroom. (*Id.* at 6, 11). However, he could not see what was in the plastic baggie and "[n]othing else about that bag showed that there was contraband or weapons or anything in that bag * * * ." (*Id.* at 20-21). Officer Coburn also saw in plain view "a bunch of marijuana shake and roaches" next to the bed in the bedroom in which he found Burroughs. (*Id.* at 11).

{¶4} Officer Coburn executed the warrant and arrested Burroughs. (*Id.* at 21). He then escorted her and the juvenile to the living room prior to transferring Burroughs to a police cruiser, and waited "for Lieutenant [Mark] Elliott [("Lieutenant Elliott")] to get there and kind of take over on the decision making." (*Id.* at 13, 21-22). The residence was secure prior to Lieutenant Elliott's arrival. (*Id.* at 23).

{¶5} After Lieutenant Elliott arrived at the residence, he detected an odor of marijuana in the residence and observed "marijuana shake in areas of the house." (Id. at 47). Lieutenant Elliott asked Officer Coburn where the bathroom was located, then went to the bathroom (without going to any other portion of the residence) to conduct a "sweep" for officer safety. (*Id.* at 62, 64). (*See also id.* at 73-74). He "saw the bag laying on the floor. [He] saw plastic baggies hanging out

-3-

of it. Looked in it to make sure there was no kind of weapon or anything that could hurt [them] and moved on." (*Id.* at 46). Lieutenant Elliott saw "[p]ieces of plastic baggies" hanging out of the bookbag but could not see what was inside the plastic baggies. (*Id.* at 53).

{¶6} According to Lieutenant Elliott, the other officers at the scene (prior to his arrival to the residence) relayed to him by radio that Burroughs "shut the door in their face" when they informed her that they were there to serve the arrest warrant and "said they saw her running to the back of the house to dispose of evidence." (*Id.* at 46). However, Lieutenant Elliott could not recall (prior to him opening the bookbag) whether he knew that Burroughs was collecting the plastic baggies when Officer Coburn saw her run to the back of the residence. (*Id.* at 46-47).

{¶7} Likewise, Lieutenant Elliott did not see "anything in a plastic baggie before [opening the bookbag] in the house"—he only suspected that contraband might be found in the bookbag; however, his main purpose for searching the bookbag was to search for weapons. (*Id.* at 49, 53-54, 59). When Lieutenant Elliott opened the bookbag, he discovered marijuana. (*Id.* at 14, 46). Because he did not find any weapons, Lieutenant Elliott abandoned the bookbag and left the scene while the other law enforcement officers looked for additional drug evidence in the residence, finding "marijuana edibles next to the bed." (*Id.* at 15, 48).

{¶8} On May 15, 2019, the Marion County Grand Jury indicted Burroughs on one count of possession of marijuana in violation of R.C. 2925.11(A), (C)(3), a fifth-degree felony. (Doc. No. 1). Burroughs appeared for arraignment on May 20, 2019 and entered a plea of not guilty. (Doc. No. 4).

{¶9} On July 19, 2019, Burroughs filed a motion to suppress evidence, alleging that law enforcement unlawfully searched the bookbag and a green cup found in the bathroom of her residence. (Doc. No. 16). The State filed a memorandum in opposition to Burroughs's motion to suppress evidence on August 6, 2019. (Doc. No. 21). After a suppression hearing on August 6, 2019, the trial court on August 15, 2019 denied Burroughs's motion to suppress evidence after concluding that law enforcement had "a lawful basis to open the bookbag since it was found in plain view and because he had probable cause to conclude that it contained contraband."[1] (Doc. No. 22).

{¶10} On September 23, 2019, Burroughs withdrew her plea of not guilty and entered a plea of no contest to possessing marijuana. (Doc. No. 24). The trial court accepted Burroughs's no-contest plea and found her guilty. (Doc. Nos. 24, 27); (Sept, 23, 2019 Tr. at 16). On November 25, 2019, the trial court sentenced

---

[1] Although the trial court did not rule on the lawfulness of law enforcement's search of the green cup, we presume that the trial court denied suppression of any evidence obtained from law enforcement's search of the green cup. *See State v. Barnhart*, 6th Dist. Erie No. E-18-046, 2019-Ohio-5002, ¶ 11, fn. 1; *State v. Sweeney*, 8th Dist. Cuyahoga No. 97414, 2012-Ohio-3152, ¶ 9; *State v. Anderson*, 11th Dist. Geauga No. 2003-G-2540, 2004-Ohio-3192, ¶ 3, fn. 3.

Burroughs to two years of community control. (Doc. No. 27); (Nov. 25, 2019 Tr. at 4). The trial court filed its judgment entry of sentence on November 26, 2019. (Doc. No. 27).

{¶11} On December 26, 2019, Burroughs filed a notice of appeal, and raises one assignment of error for our review. (Doc. No. 28).

**Assignment of Error**

**The Trial Court Erred In Denying Defendant, Appellant's Motion to Suppress Evidence.**

{¶12} In her sole assignment of error, Burroughs argues that the trial court erred by denying her motion to suppress evidence. Specifically, Burroughs argues that law enforcement's search and seizure of the bookbag found in her bathroom was conducted without a warrant and not pursuant to any exception to the warrant requirement of the Fourth Amendment.

*Standard of Review*

{¶13} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at

¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Analysis*

{¶14} "The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Ohio Constitution, Article I, Section 14, protects individuals against 'unreasonable searches and seizures' by the government and protects privacy interests where an individual has a reasonable expectation of privacy." *State v. Fielding*, 10th Dist. Franklin Nos. 13AP-654 and 13AP-655, 2014-Ohio-3105, ¶ 15, quoting *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577 (1979). *See also State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12. "An expectation of privacy is protected by the Fourth Amendment where (1) an individual has exhibited a subjective expectation of privacy, and (2) that expectation of privacy is one that 'society is prepared to recognize as "reasonable."'" *Fielding* at ¶ 15, quoting *Smith* at 740, quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507 (1967) (Harlan, J., concurring). "Generally, any evidence obtained in violation of the Fourth Amendment, as well as any evidence seized subsequent to such violation, must be suppressed as 'fruit of the poisonous tree.'" *Id.*, quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83

S.Ct. 407 (1963). *See also State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9 (The Fourth Amendment does not explicitly provide "that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment."), citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶15} Warrantless searches and seizures of person's home and personal property are presumed unreasonable unless an exception to the warrant requirement is shown. *See State v. Jackson*, 12th Dist. Madison No. CA2019-03-006, 2020-Ohio-2677, ¶ 19 ("Warrantless seizures of personal property are generally considered unreasonable under the Fourth Amendment unless there is probable cause to believe the property is or contains contraband or evidence of a crime and the seizure falls within an established exception to the warrant requirement."), citing *United States v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637 (1983); *State v. Yost*, 5th Dist. Perry No. 18-CA-00024, 2019-Ohio-5446, ¶ 23 ("A warrantless search of a person's home is presumed unreasonable unless an exception to the warrant requirement is shown."), citing *State v. Diaz*, 5th Dist. Stark No. 2016 CA 00113, 2017-Ohio-262, ¶ 16, citing *State v. Angelo*, 9th Dist. Summit No. 24751, 2009-Ohio-6966, ¶ 10. "At a suppression hearing, the State bears the burden of

establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness." *Steinbrunner* at ¶ 12, citing *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph two of the syllabus, *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999).

{¶16} In this case, the trial court concluded that law enforcement's search and seizure of the bookbag were lawfully conducted under the plain-view exception to the search-warrant requirement. "The plain view doctrine represents the requirement that an individual must protect his or her privacy, and should an officer observe items in plain view from a place where the officer is entitled to be, no warrant is required." *Jackson* at ¶ 19, citing *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, ¶ 16. Thus, "[i]t is well established that law enforcement officers do not need a search warrant to *seize* incriminating evidence discovered in a place where they have a right to be under the plain-view exception to the search-warrant requirement." (Emphasis added.) *State v. Parsons*, 3d Dist. Henry No. 7-16-08, 2017-Ohio-1315, ¶ 29, citing *State v. Bazrawi*, 10th Dist. Franklin No. 12AP-1043, 2013-Ohio-3015, ¶ 32, citing *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301 (1990) and *State v. Williams*, 55 Ohio St.2d 82, 84 (1978). "Under 'the plain-view exception, "police may *seize* evidence in plain view during a lawful search if: (1) the seizing officer is lawfully present at the place from which the evidence can

be plainly viewed; (2) the seizing officer has a right of access to the object itself; and (3) the object's incriminating character is immediately apparent.""'" (Emphasis added.) *Id.*, quoting *Bazrawi* at ¶ 32, quoting *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 11, citing *Horton* at 136-137.

{¶17} "Under the first prong, "[t]he plain-view exception permits a law enforcement officer to seize clearly incriminating contraband only when it is discovered in a place where the officer has a right to be." (Emphasis added.) *State v. Garrett*, 2d Dist. Montgomery No. 27630, 2018-Ohio-4530, ¶ 23, quoiting *Alihassan* at ¶ 20. The second prong of the plain-view analysis "requires this court to determine whether the officers had a lawful right of access to the evidence discovered in plain view." *Id.* at ¶ 33.

{¶18} Finally, under the last prong of the plain-view analysis, "it must be determined whether the incriminating nature of the evidence observed by the officers was immediately apparent." *Id.* at ¶ 30. "'An object's incriminating nature is immediately apparent when a police officer has probable cause to believe the item is associated with criminal activity.'" *Id.*, quoting *State v. Bales*, 2d Dist. Montgomery No. 24897, 2012-Ohio-4968, ¶ 25, citing *State v. Halczyszak*, 25 Ohio St.3d 301, 304 (1986) and *Texas v. Brown*, 460 U.S. 730, 741-742, 103 S.Ct. 1535 (1983). *See also State v. Holmes*, 3d Dist. Allen No. 1-18-52, 2019-Ohio-2485, ¶ 46. "'In ascertaining the required probable cause to satisfy the "immediately

apparent" requirement, police officers may rely on their specialized knowledge, training and experience.'" *Holmes* at ¶ 46, quoting *Halczyszak* at paragraph four of the syllabus. "The criminal character of an object may be immediately apparent because of the nature of the article and the circumstances in which it is discovered." *Garrett* at ¶ 30, quoting *State v. Olden*, 2d Dist. Montgomery No. 23137, 2010-Ohio-215, ¶ 29, citing *State v. Dunson*, 2d Dist. Montgomery No. 22219, 2007-Ohio-6681, ¶ 24.

{¶19} In this case, Burroughs does not dispute that law enforcement were lawfully present in her residence when Officer Coburn (followed by Lieutenant Elliott) observed the bookbag in plain view or that law enforcement had a lawful right of access to the bookbag. (Appellant's Brief at 9-10). *See Garrett* at ¶ 23, citing *Florida v. Jardines*, 569 U.S. 1, 8, 133 S.Ct. 1409 (2013). *See also* R.C. 2935.12. Rather, Burroughs challenges the trial court's conclusion that the criminal character of the bookbag was immediately apparent. However, even if we assume without deciding that law enforcement had probable cause to believe that the bookbag was associated with criminal activity—that is, that the criminal character of the bookbag was immediately apparent—that conclusion supports *only* law enforcement's authority to seize the bookbag under the plain-view exception based on the facts presented by this case—not the authority to search the bookbag. *See Brown*, 460 U.S. at 749-750 (Stevens, J., concurring) (noting "that the

constitutionality of a container search is not automatically determined by the constitutionality of the prior seizure" and that "[s]eparate inquiries are necessary, taking into account the separate interests at stake"); *United States v. Fore*, W.D.N.C. No. 1:15cr06, 2015 WL 8785381, *8 (Sept. 18, 2015) ("Moreover, even where the seizure of a container is warranted under the plain view doctrine, the doctrine may not allow officers to actually search that container."). *See also State v. Wehr*, 5th Dist. Richland No. 14CA46, 2014-Ohio-4396, ¶ 26 ("Many a closed container is accessible; opening it requires justification."), citing *United States v. Chadwick*, 433 U.S. 1, 14-15, 97 S.Ct. 2476 (1977).

{¶20} "'[A]lthough the plain view doctrine may support the warrantless seizure of a container believed to contain contraband, any subsequent search of its concealed contents must either be accompanied by a search warrant or justified by one of the [other] exceptions to the warrant requirement.'" *State v. Johnson*, 7th Dist. Jefferson No. 15 JE 0020, 2017-Ohio-5708, ¶ 21, quoting *United States v. Williams*, 41 F.3d 192, 197 (4th Cir.1994), citing *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652 (1984) (noting that "[e]ven when government agents may lawfully seize * * * a package to protect loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package"), *Brown* at 749-751 (Stevens, J., concurring) (stating that the plain-view doctrine supports the warrantless seizure of

a closed container but not the warrantless search of its contents that are not visible to law enforcement), and *United States v. Corral*, 970 F.2d 719, 725 (10th Cir.1992) ("In cases involving closed containers * * * the plain view doctrine may support the warrantless seizure of a container believed to contain contraband but any subsequent search of the concealed contents of the container must be accompanied by a warrant or justified by one of the exceptions to the warrant requirement."). *See also State v. Hamm*, 6th Dist. Huron No. H-90-37, 1991 WL 254061, *3 (Nov. 15, 1991) ("The general rule regarding searches of closed containers is, where an officer has probable cause to believe that a closed container contains contraband, the Fourth Amendment permits seizure of the container pending issuance of a warrant to search it, if exigent circumstances or some other recognized exception to the warrant requirement is present."), citing *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637 (1983); Katz, *Ohio Arrest, Search and Seizure*, Section 15:6, at 387 (2015). "Courts have drawn a distinction between the plain view seizure of a container and the subsequent search of that container, because its seizure under the plain view doctrine 'does not compromise the interest in preserving the privacy of its contents,'" while its search does." *Johnson* at ¶ 21, quoting *Williams* at 197, quoting *Horton*, 496 U.S. at 141, fn. 11, and citing *United States v. Donnes*, 947 F.2d 1430, 1436-1437 (10th Cir.1991). *See also State v. Telthorster*, 5th Dist. Licking No.

97CA87, 1997 WL 973456, *4 (Dec. 24, 1997) (noting that "once seized," "the next issue becomes whether * * * the container may be opened without a warrant").

{¶21} Indeed, "[i]t is well established that an individual has a heightened expectation of privacy in the contents of a closed container." *Johnson* at ¶ 21, citing *Chadwick*, 433 U.S. at 13. "Luggage, handbags, paper bags, and other containers are common repositories for one's papers and effects, and the protection of these items from state intrusion lies at the heart of the Fourth Amendment." *Id.*, citing the Fourth Amendment to the U.S. Constitution. "By placing his [or her] possessions inside a container, an individual manifests an intent that his possessions be 'preserve[d] as private,' and thus kept 'free from public examination.'" *Id.*, quoting *Katz*, 389 U.S. at 351and *Chadwick* at 11.

{¶22} One recognized exception to the warrant requirement which permits law enforcement to search a closed container (which is lawfully seized under the plain-view exception) is the single-purpose container exception. *See Williams* at 197, citing *Jacobsen* at 114; *Brown* at 749-751 (Stevens, J., concurring), and *Corral* at 725. A single-purpose container is a container that "'by [its] very nature cannot support any reasonable expectation of privacy because [its] contents can be inferred from [its] outward appearance.'" *Donnes* at 1437, quoting *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586 (1979), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982 (1991), and citing *Robbins v. California*, 453 U.S.

420, 101 S.Ct. 2841 (1981), *overruled on other grounds*, *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157 (1982). *See also United States v. Miller*, 769 F.2d 554, 556-560 (9th Cir.1985). That is, "'when a container is "not closed," or "transparent," or when its "distinctive configuration * * * proclaims its contents," the container supports no reasonable expectation of privacy and the contents can be said to be in plain view.'" *Holmes*, 2019-Ohio-2485, at ¶ 51, quoting *Donnes* at 1437, quoting *Robbins* at 427, and *Sanders* at 764, fn. 13. *See Johnson* at ¶ 21 ("If an object is in a closed container, the object 'is not in plain view and the container may not be opened unless the packing gives away the contents.'"), quoting Katz, *Ohio Arrest, Search and Seizure*, Section 13:01, at 221 (1997), citing *Williams*, 41 F.3d at 198 ("When a container has been legally seized, and its contents are a foregone conclusion, we hold that a subsequent search of the container is lawful under the plain view container doctrine."). "Hence, 'where the contents of a seized container are a foregone conclusion, [the] prohibition against warrantless searches of containers under the plain view doctrine does not apply.'" *Holmes* at ¶ 51, quoting *Corral* at 725. In other words, "where the police already possess knowledge approaching certainty as to the contents of the container, the search of the container does not unreasonably infringe upon the individual interest in preserving the privacy of those contents." *Corral* at 725-726, citing *Brown* at 751, fn. 5 (Stevens, J.,

concurring) ("[I]n evaluating whether a person's privacy interests are infringed, 'virtual certainty' is a more meaningful indicator than visibility.").

{¶23} Furthermore, "[u]nderstood best, the single-purpose container exception is an outgrowth of the plain view doctrine subject to the same requirements." Armstrong, *Single-Purpose Containers: The Circuit Split Presents A Battle Between Values As Disparate As Gen. & Specific Warrants*, 51 Hous.L.Rev. 1115, 1130 (2014), citing *Miller* at 556-557. That is, in addition to being identified as a single-purpose container, "[t]he officer who encounters a package must lawfully be in the location where it is found, the officer must have a lawful right to access the package, and the criminal nature of the package's contents must be immediately apparent." *Id.*, citing *Miller* at 556-557.

{¶24} Although the single-purpose container exception is widely recognized, there is a split between jurisdictions as to its application. *See United States v. Tejada*, 524 F.3d 809, 813 (7th Cir. 2008) (noting that what constitutes a package that proclaims its contents "is an issue that has divided the circuits"). *Compare Miller* at 560 ("Law enforcement officers should not be permitted under the single-purpose container rule set out in *Sanders* footnote 13 to conduct warrantless searches of containers that, though unrevealing in appearance, are discovered under circumstances supporting a strong showing of probable cause.") *with Williams* at 197 ("In determining whether the contents of a container are a foregone conclusion,

the circumstances under which an officer finds the container may add to the apparent nature of its contents."). *See also* Lucier, *You Can Judge A Container by Its Cover: The Single-Purpose Container Exception & the Fourth Amendment*, 76 U.Chi.L.Rev. 1809, 1819-1824 (2009); Armstrong, *Single-Purpose Containers* at 1131-1139.

{¶25} We agree with the jurisdictions that conclude that the determination regarding whether a container constitutes a single-purpose container should be based on the facts and circumstances surrounding the discovery of the container. *See Telthorster*, 1997 WL 973456, at *5 (applying "all the circumstances surrounding the seizure of the tied-off piece of plastic, the training and experience of the officers, and the uniqueness of the container" to determine whether a container may be searched under the single-purpose container exception); *United States v. Cardona-Rivera*, 904 F.2d 1149, 1155-1156 (7th Cir.1990) ("Several Justices—almost certainly a majority—believe however that if the shape or other characteristics of the container, taken together with the circumstances in which it is seized (from a suspected drug dealer, or a harmless old lady?), proclaim its contents unambiguously, there is no need to obtain a warrant."), citing *Sanders* at 764, fn. 13, *Jacobsen* at 119, *Brown* at 750-751, (Stevens, J., concurring); *Miller*, at 560, and *United States v. Eschweiler*, 745 F.2d 435, 440 (7th Cir.1984).

**{¶26}** Accordingly, based on our review of the specific facts and circumstances of this case, we conclude that law enforcement was authorized to search the bookbag under the single-purpose container exception. At the suppression hearing, the State presented evidence that (based on the totality of the circumstances) it was a foregone conclusion to law enforcement that the bookbag contained contraband. That is, the circumstances under which the bookbag was discovered (coupled with the knowledge and experience of the law enforcement officers who observed the bookbag) not only proclaimed its contents but rendered the criminal nature of the contents of the bookbag immediately apparent. *See Telthorster* at *5. *See also Wehr*, 2014-Ohio-4396, at ¶ 28. *But see State v. Wise*, 6th Dist. Huron No. H-06-038, 2007-Ohio-3113, ¶ 20 (concluding that law enforcement was not authorized to search a backpack even though law enforcement "may have been extremely confident that the backpack contained marijuana").

**{¶27}** Specifically, Officer Coburn testified at the suppression hearing that Burroughs closed and locked the door after he informed her that he was present to serve a warrant for her arrest. Officer Coburn then saw Burroughs grab "a bunch of plastic baggies" and retreat "to the back of the house". (Aug. 6, 2019 Tr. at 5). He testified (based on his training and experience) that he believed that the baggies "looked like things that people keep drugs in" and he feared that she "was going to flush drugs" because she was "moving around and running to the back, as if she was

in a hurry to get rid of something * * * ." (*Id.* at 5-6). So Officer Coburn breached Burroughs's door and "found her in the back-left room where [he] saw her run to," then he "went into the bathroom that was attached to that room" where he saw the bookbag with "a plastic baggie hanging out of it" which resembled the plastic baggies he saw Burroughs with prior to his entry into the residence. (*Id.* at 6-7). Importantly, Officer Coburn further observed marijuana next to the bed in the bedroom in which Burroughs was located.

{¶28} Likewise, Lieutenant Elliott observed that "[b]aggies [were] hanging out of" the bookbag prior to his search of the bookbag. (*Id.* at 49). (*See also id.* at 46). Drawing on his 17 years of training and experience, Lieutenant Elliott testified that he thought that the bookbag was "[l]ikely used to store drugs" based on his observation of the plastic baggies protruding from the bookbag as well has his detection of the odor of marijuana in the residence as well as marijuana shake on the table. (*Id.*). Specifically, Lieutenant Elliott testified (based on his training and experience) that the discovery of marijuana and plastic baggies in the residence was indicative that narcotics were being packaged in the house. (*Id.* at 44).

{¶29} Therefore, based on the collective knowledge of law enforcement at the time Lieutenant Elliott searched the bookbag, we conclude that the contents of the bookbag were not only a foregone conclusion but that the criminal nature of the contents was also immediately apparent. *See United States v. Yoon*, 398 F.3d 802,

812 (6th Cir.2005) (noting that "courts have imputed collective knowledge about criminal investigations to law enforcement officials"), citing *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir.1989) (noting that "[m]any circuits, including our own, have determined that probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest") and *United States v. Woods*, 544 F.2d 242, 260 (6th Cir.1976) (describing the collective knowledge theory as imputing mutual knowledge to "a group of agents in close communication with one another [who] determine[ ] that it is proper to arrest an individual"); *United States v. Walker*, 160 F.3d 1078, 1087 (6th Cir.1998). Thus, law enforcement's warrantless search of the bookbag was permissible under the single-purpose container exception under the totality of the circumstances present in this case.

{¶30} Notwithstanding the quantum of evidence establishing the bookbag as a single-purpose container (based on the specific facts and circumstances of this case), Burroughs further argues that the trial court's findings that (1) "the baggies were like other baggies that contained drugs"; (2) "the bookbag contained the same baggies [Burroughs] was seen grabbing off the table"; and (3) "multiple baggies were hanging out of the bookbag, prior to its search" are not supported by competent, credible evidence. (Appellant's Brief at 5-7). Burroughs's challenges to the trial court's factual findings are without merit.

**{¶31}** First, Burroughs contends that the trial court's factual findings that "the baggies were like other baggies that contained drugs" and that "the bookbag contained the same baggies [Burroughs] was seen grabbing off the table" are not supported by competent, credible evidence because Officer Coburn testified that he did not know what was in the baggies or provide any "descriptive evidence in the form of shape, color, etc., to warrant him forming the conclusion it was the same baggie he saw in [Burroughs's] possession earlier." (Appellant's Brief at 5-7). Despite Officer Coburn's testimony that he did not know what was in the baggies and the absence of any descriptive testimony, Officer Coburn testified (based on his training and experience) that he thought that the baggies "looked like things that people keep drugs in" and that the plastic baggie that he saw protruding from the bookbag resembled the plastic baggies he saw Burroughs collect as she retreated to the rear of the residence. (Aug. 6, 2019 Tr. at 5-7). Since the trial court is in the best position to evaluate the credibility of witnesses, it was within the province of the trial court to find Officer Coburn's description of the plastic baggies credible. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8; *Carter*, 72 Ohio St.3d at 552. Therefore, we reject Burroughs's arguments challenging the trial court's factual findings that "the baggies were like other baggies that contained drugs" and that "the bookbag contained the same baggies [Burroughs] was seen grabbing off the table." (Appellant's Brief at 5, 7).

{¶32} Next, Burroughs's contends that the trial court's finding that law enforcement observed "multiple baggies were hanging out of the bookbag, prior to its search" is not supported by competent, credible evidence because Officer Coburn testified that he saw only "a plastic baggie hanging out of" the bookbag. (Aug. 6, 2019 Tr. at 6, 19-20). However, even though Officer Coburn recalled seeing a single baggie protruding from the bookbag, Lieutenant Elliott (as we noted above) recalled seeing "plastic *baggies*" protruding from the bookbag prior to his search of it. (Emphasis added.) (*Id.* at 49). (*See also id.* at 46). Notwithstanding this contradiction, whether there was a single or multiple plastic baggies protruding from the bookbag, our conclusion that the totality of the circumstances surrounding law enforcement's discovery of the bookbag permitted its search under the single-purpose container exception is not altered. Importantly, the trial court's factual finding that some amount of plastic baggies (similar to the plastic baggies that Burroughs was seen collecting as she was retreating to the rear of the residence) were observed protruding from the bookbag is supported by competent, credible evidence. Accordingly, Burroughs's argument is specious.

{¶33} For these reasons, the trial court did not err by denying Burroughs's motion to suppress evidence obtained from its warrantless search and seizure of the bookbag (albeit for a different reason than stated in the trial court's decision). *See State v. Holland*, 10th Dist. Franklin No. 13AP-790, 2014-Ohio-1964, ¶ 20

(affirming the trial court's denial of Holland's motion to suppress evidence "for a different reason than stated in the trial court's decision"). Thus, Burroughs's assignment of error is overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J., concurs.**

**/jlr**

**WILLAMOWSKI, J., dissents.**

{¶35} Having reviewed the record, I respectfully dissent from the majority's determination that the single purpose exception applied in this case. The determination as to whether a plain view exception to a warrant applies is reviewed de novo. *U.S. V. Williams*, 41 F.3d 192, 196 (4th Cir. 1994). "The following three conditions must be satisfied in order to justify the warrantless seizure of an item under the plain view doctrine: (1) the seizing officer must be lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized

is incriminating on its face." *Id.* citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

**{¶36}** In this case, it was not the search of the baggies, but the search of the bookbag that is in question, as that was the closed container. "If an object is in a closed container, the object 'is not in plain view and the container may not be opened unless the packing gives away the contents.' " *State v. Johnson,* 7th Dist. Jefferson No. 15 JE 0020, 2017-Ohio-5708, ¶ 21 citing *Katz* Ohio Arrest, Search and Seizure (1997 Ed.) 214, Section 13.01 at 221, citing *U.S. v. Williams*, 41 F.3d 192 (4th Cir. 1994). The bookbag was not opaque, was closed, and the officers did not know what it contained. All of the testimony indicates that although the officers suspected that the baggie partially sticking out of the bookbag contained drugs, which were not within plain view, they did not know what was in the bookbag. Thus, the criminal nature of the bookbag was not readily apparent.

**{¶37}** Additionally, the officers still needed the legal right to look inside the bookbag in the first place. Lieutenant Elliott testified that he opened the bookbag to search for weapons for the purpose of officer safety. However, at the time the bag was initially opened, the suspect was in the police car in handcuffs and the house had been secured. The bag was not accessible by anyone. Thus there simply was no legally proper reason to search the bag for weapons. Officer Coburn even testified that he did not open the bookbag when he saw it while Burroughs was still

in the home because he believed they would need a search warrant to do so. Tr. 26-27, 36-37.

{¶38} The trial court in this case found that the bookbag "may have been evidence of a crime, contraband, or otherwise subject to seizure." Doc. 22. The trial court based this upon the holding of the U.S. Supreme Court in *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). However, the facts in *Hicks* were about the manipulation of an object to see a serial number, not the opening of a closed container. The Court held that the officer violated the Fourth Amendment by turning the object to view the serial number despite the fact that the item was in plain view because the officer lacked probable cause to do so. Even in situations where officers may reasonably seize a sealed package to prevent the destruction of evidence, the Fourth Amendment requires the officers to obtain a warrant prior to opening the item. *U.S. v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The Supreme Court has held that although the Fourth Amendment permits a detention of property, the search of that property requires a "judicial warrant issued upon probable cause." *Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990). "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit

seizure of the property, pending issuance of a warrant to examine its contents[.]" *U.S. v. Place*, 462 U.S. 696, 701, 103 S.Ct.2637, 77 LE. 2d 110 (1983).

{¶39} Based upon the facts of this case, the officers did have probable cause to obtain a search warrant for the bookbag. The proper course of action in this case would have been for the officers to seize the bookbag as suspicious and then obtain a warrant to open it, as was noted by the majority. Unfortunately in this case, the officers chose to forego the warrant and just proceed with the warrantless search. Officer Coburn admitted that they did not have the consent of anyone to search the bookbag. Tr. 35. There were no exigent circumstances nor any other warrant exception that existed to permit this. Although the bookbag was in plain view, the contents were not and the contents were not readily apparent. No warrant was needed to seize the closed container in plain view. However a warrant was required to search the closed package. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). That was not done in this case. Thus, I would have granted the motion to suppress as to the contents of the bookbag. For these reasons, I respectfully dissent.